IN THE CIRCUIT COURT OF JACKSON COUNTY MISSISSIPPI

MISSISSIPPI COAST PHYSICIANS LLC and
BIENVILLE ORTHOPAEDIC SPECIALISTS LLC                    PLAINTIFFS

VS.                          CIVIL ACTION NO. 20½6-0012\ (2)

MULTIPLAN                                                 DEFENDANT

## SUMMONS

STATE OF MISSISSIPPI

TO:   **MULTIPLAN, INC.**
      **c/o Corporation Service Company**
      **Registered Agent for Service of Process**
      **5760 I-55 North, Suite 150**
      **Jackson, Mississippi**

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE
IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to
Lewis W. Bell, the Attorney for the plaintiffs, whose post office address is Post Office Box 650,
Jackson, Mississippi 39205-0650, and whose street address is 400 East Capitol Street, Jackson,
Mississippi 39201. Your response must be mailed or delivered within thirty (30) days from the
date of delivery of this summons and complaint or a judgment by default will be entered against
you for the money or other things demanded in the complaint.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

ISSUED UNDER MY HAND AND THE SEAL OF SAID COURT, this the ___7___ day of ___July___ 2016.

RANDY CARNEY, CLERK
JACKSON COUNTY CIRCUIT COURT

BY: _____
               Deputy Clerk

**EXHIBIT**
" _1_ "



## PROOF OF SERVICE - SUMMONS

I, the undersigned process server, personally served the Summons and Complaint upon: Multiplan, Inc., c/o Corporation Service Company, Its Registered Agent for Process, on the _____ day of _____, 2016, on the following: _____

_____

_____

At the time of service I was at least 18 years of age and not a party to this action.

Process server must list below:

Name: _____

Address: _____

Telephone No.: _____

STATE OF MISSISSIPPI

COUNTY OF _____

Personally appeared before me the undersigned authority in and for the state and country aforesaid, the within named _____, who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service - Summons" are true and correct as therein stated.

_____

PROCESS SERVER (Signature)

Sworn to and subscribed before me, this the _____ day of _____, 2016.

_____

NOTARY PUBLIC

MY COMMISSION EXPIRES:

_____

(SEAL)

IN THE CIRCUIT COURT OF JACKSON COUNTY MISSISSIPPI

MISSISSIPPI COAST PHYSICIANS LLC and
BIENVILLE ORTHOPAEDIC SPECIALISTS LLC                    PLAINTIFFS

VS.                                            CAUSE NO. 2016-0021(2)

MULTIPLAN, INC.                                                         DEFENDANT

JUL 01 2016

RANDY CARNEY, CLERK

BY _____ D.C.

## COMPLAINT

Mississippi Coast Physicians LLC ("Mississippi Coast Physicians") and Bienville

Orthopaedic Specialists LLC ("Bienville Orthopaedic"), for their complaint against Multiplan,

Inc. ("Multiplan"), say:

### Parties

1.      Mississippi Coast Physicians is a Mississippi limited liability company with its

principal place of business at 3890 Bienville Boulevard, Ocean Springs, Mississippi.

2.      Bienville Orthopaedic is a Mississippi limited liability company with its principal

place of business at 3635 Bienville Boulevard, Ocean Springs, Mississippi.

3.      Multiplan is a Delaware corporation with its principal place of business in the

State of New York.  Multiplan may be served with process of this court by serving Corporation

Service Company, 5760 I-55 North, Suite 150 Jackson, Mississippi, its registered agent in the

State of Mississippi.

### Jurisdiction and Venue

4.      This court has jurisdiction over this case pursuant to *Miss. Code. Ann.* § 13-3-57

because Multiplan, a foreign corporation, entered a contract with plaintiffs, who are Mississippi

limited liability companies, to be performed in whole or in part by plaintiffs and defendant in this

state, and because Multiplan has committed a tort in whole or in part in this state against the plaintiffs, and because Multiplan has and does business and performs work or service in this state.

5.      Venue is proper in this court pursuant to *Miss. Code Ann.* §11-11-3 (1)(a)(i) and (b), as amended in 2004, because substantial breaches of contract and substantial acts or omissions by Multiplan occurred in this county and because plaintiffs are located and have their principal places of business in this county.

Factual Background

6.      Mississippi Coast Physicians is an independent practice association.  Bienville Orthopaedic and its physicians and other health care professionals provide orthopedic medical care.  Bienville Orthopaedic and its physicians and other health care professionals are members of and/or are participants in the Mississippi Coast Physicians independent practice association.

7.      Defendant Multiplan is in the business of healthcare cost reduction management and the creation and management of preferred provider organizations to reduce healthcare costs for Multiplan's clients.

The Multiplan Agreement

8.      Effective November 1, 2000, Mississippi Coast Physicians and its members, including Bienville Orthopaedic and its physicians and other health care professionals, entered a contract called "Participating Group Practice Agreement" (the "Agreement").  A true and correct copy of this contract is attached hereto as exhibit A.

9.      The purpose of the Agreement was for Multiplan to establish a preferred provider relationship with Mississippi Coast Physicians and Bienville Orthopaedic for Multiplan's Clients.

10.     Under the Agreement, Mississippi Coast Physicians and Bienville Orthopaedic and its physicians and other health care professionals agreed to accept contractually discounted rates of reimbursement for claims submitted for covered medical services.

11.     The Agreement defines and includes as Multiplan's Clients self-insured employers, union welfare funds, third party administrators, and workers compensation insurance carriers who issue or who administer health benefits services coverage pursuant to a benefit plan, an automobile liability insurance policy, or a workers compensation program or plan, for covered individuals ("Participants") in the Clients' respective plans or Benefit Programs.  (*e.g.*, Agreement, section A, paragraph 3, exhibit A).  Multiplan's Clients sent Participants to Mississippi Coast Physicians members, including Bienville Orthopaedic and its physicians and other health care professionals.

12.     Under the Agreement, Mississippi Coast Physicians and Bienville Orthopaedic and its physicians and other health care professionals agreed to accept as payment in full for covered services other than services rendered in connection workers' compensation, no-fault auto insurance, and any other coverage for which there is a state mandated fee schedule, the lesser of, after any applicable co-payment, co-insurance or deductible:

a.      the amount specified in Multiplan's fee schedule, or

b.      Mississippi Coast Physicians and Bienville Orthopaedic and its physicians and other health care professionals' usual and customary charges.

(Agreement, section D, paragraphs 2 a & b, exhibit A).

13.     For covered services rendered by Mississippi Coast Physicians and Bienville Orthopaedic and its physicians and other health care professionals in connection workers' compensation, no-fault auto insurance, or any other coverage for which there is a state mandated

3

fee schedule, Mississippi Coast Physicians and Bienville Orthopaedic and its physicians and other health care professionals agreed to accept as payment in full the lesser of the state-mandated fee schedule or, if fee negotiation is permitted by state law or regulation, ninety percent (90%) of the state fee schedule, after any applicable co-payment, co-insurance or deductible:

      c.      with respect to services rendered in connection with Workers' Compensation, no-fault automobile insurance and/or other coverage for which there is a state-mandated fee schedule, if fee negotiation is permitted by law and/or regulation in the applicable state, ninety percent of the state fee schedule amount as payment in full for each covered service rendered to a Participant.

(Agreement, section D, paragraph 2. c., exhibit A).

      14.      By law in Mississippi, charges for medical services for workers' compensation patients are set by fee schedule, and fee negotiation between medical providers and payers is permitted.  Mississippi Workers' Compensation Medical Fee Schedule (Billing & Reimbursement Rules, §I).

<u>Multiplan's breach of the Agreement by wrongly reducing plaintiffs' workers compensation claims for medical treatment below 90% of the Mississippi Workers' Compensation fee schedule for these services</u>

      15.      Following the effective date of the Agreement, Multiplan's Clients began sending their Participants in workers' compensation plans or Benefit Programs to Bienville Orthopaedic and its physicians and other health care professionals for orthopedic medical care.  Bienville Orthopaedic and its physicians and other health care professionals provided orthopedic medical care and services for hundreds of Participants in workers compensation plans or Benefit Programs.

16.     Bienville Orthopaedic and its physicians and other health care professionals submitted claims for orthopedic medical care and services to Multiplan's Clients for these Participants in workers compensation plans or Benefit Programs.

17.     By providing medical services for these Participants, Multiplan and Multiplan's Clients became contractually and/or statutorily obligated to pay Mississippi Coast Physicians and Bienville Orthopaedic.

18.     In accordance with the Agreement, Bienville Orthopaedic and its physicians and other health care professionals promptly submitted Clean Claim forms for charges for medical services provided to Participants in workers compensation plans or Benefit Programs to Multiplan's Clients.

19.     Multiplan's Clients submitted Bienville Orthopaedic and its physicians and other health care professionals' charges to Multiplan for "repricing."

20.     Multiplan reduced all such charges to match the charges set by Multiplan's on its fee schedule. After reducing plaintiffs' charges to the amounts in Multiplan's fee schedule, Multiplan sent the repriced charges back to its Clients, who then paid Bienville Orthopaedic and its physicians and other health care professionals the amounts as reduced and approved by Multiplan.

21.     The allowed amounts for medical services on Multiplan's fee schedule are lower than the allowed amounts for medical services on the Mississippi Workers' Compensation Medical Fee Schedule and are lower than ninety percent (90%) of the charges on Mississippi Workers' Compensation Medical Fee Schedule.

22.     Multiplan's unilateral decision, policy and practice to reduce charges for medical services provided by Bienville Orthopaedic and its physicians and other health care professionals

for medical services provided to Participants in workers compensation plans or Benefit Programs to the amounts in Multiplan's fee schedule violated and breached the Agreement.

23. Under the section D paragraph 2. c. of the Agreement, Multiplan was obligated to reduce charges provided by Bienville Orthopaedic and its physicians and other health care professionals for medical services provided to Participants in workers compensation plans or Benefit Programs to the lesser of the Mississippi Workers' Compensation Medical Fee Schedule for medical services or ninety percent (90%) of the Mississippi Workers' Compensation Medical Fee Schedule for medical services. Multiplan breached the Agreement by failing and refusing to follow the Agreement's requirement to reduce charges submitted by Bienville Orthopaedic and its physicians and other health care professionals for medical services provided to Participants in workers compensation plans or Benefit Programs to the lesser of the Mississippi Workers' Compensation Medical Fee Schedule for medical services or ninety percent (90%) of the Mississippi Workers' Compensation Medical Fee Schedule for medical services. Multiplan failed to follow the Agreement's requirements as it was obligated to do continuously and throughout the term of the Agreement.

24. Multiplan's breach of the Agreement by refusing to reduce charges submitted by Bienville Orthopaedic and its physicians and other health care professionals for medical services provided to Participants in workers compensation plans or Benefit Programs to ninety percent (90%) of the Mississippi Workers' Compensation Medical Fee Schedule as Multiplan was obligated to do under section D, paragraph 2. c. of the Agreement was continuous.

25. Mississippi Coast Physicians and Bienville Orthopaedic followed the grievance and appeal procedures in section C, paragraph 6 of the Agreement to dispute Multiplan's improper and wrongful reduction of these charges, but Multiplan rejected all grievances and

6

appeals.

26.     Multiplan's breach of the Agreement by reducing the charges submitted by
Bienville Orthopaedic and its physicians and other health care professionals for medical services
provided to Participants in workers compensation plans or Benefit Programs to the amounts for
such charges in Multiplan's own fee schedule instead of reducing the claims to ninety percent
(90%) of the Mississippi Workers' Compensation Medical Fee Schedule, as Multiplan was
obligated to do under section D paragraph 2. c. of the Agreement, proximately caused injury to
Bienville Orthopaedic.

27.     Bienville Orthopaedic's damages caused by Multiplan's breach of the Agreement
are the difference between the reductions made by Multiplan to the amounts in Multiplan's fee
schedule and ninety percent (90%) of the Mississippi Workers' Compensation Medical Fee
Schedule.

28.     In the alternative, Bienville Orthopaedic's damages caused by the continuous
breaches by Multiplan are the difference between what Multiplan's Clients paid pursuant to
Multiplan's reductions of these claims and the actual amount of the claims submitted by
Bienville Orthopaedic because these claims were not paid within thirty (30) business days from
the date of receipt of the Clean Claims as permitted by section D, paragraph 3 of the Agreement.

<u>Multiplan further breached the Agreement by authorizing reductions
in medical services provided by plaintiffs to entities who are not Multiplan's Clients</u>

29.     Under the Agreement, Multiplan's Clients are entitled to receive reductions in the
cost of medical services provided by Mississippi Coast Physicians and Bienville Orthopaedic to
Participants. To be a Client under the Agreement, the Client must have a contract with
Multiplan. (Agreement, section A, paragraph 3, exhibit A). Multiplan reduced charges for

medical services provided by Mississippi Coast Physicians and Bienville Orthopaedic for entities that were not Clients of Multiplan.

30.     Multiplan breached the Agreement by reducing charges for medical services provided by Mississippi Coast Physicians and Bienville Orthopaedic for entities that were not Clients of Multiplan as defined by the Agreement.  These breaches of the Agreement proximately caused injury and damage to Mississippi Coast Physicians and Bienville Orthopaedic.

31.     Multiplan fraudulently concealed these actions from Bienville Orthopaedic by taking affirmative actions to keep Mississippi Coast Physicians and Bienville Orthopaedic from knowing or discovering that Multiplan was reducing claims for employers or workers compensation insurance carriers who were not Clients of Multiplan, even though Mississippi Coast Physicians and Bienville Orthopaedic acted with due diligence to discover these breaches of the Agreement and acts of wrongdoing by Multiplan, without being able to do so.

### Termination of the Agreement due to Multiplan's material breaches

32.     Pursuant to section E, paragraph 2.a. of the Agreement, the Agreement between Multiplan, Mississippi Coast Physicians and Bienville Orthopaedic may be terminated by any party for any reason by written notice of termination at least ninety days prior to the end of the Agreement term in progress.  Pursuant to section E, paragraph 2.b. of the Agreement, the Agreement may be terminated for cause due to a material breach by giving thirty days' advance notice.  The notice of termination for cause is not effective if the breaching party cures the material breach within the thirty day notice period.

8

33.     By letters dated February 4, 2015 and May 14, 2015 (exhibit B hereto),
Mississippi Coast Physicians notified Multiplan of its intent to terminate the Agreement,
pursuant to section E of the Agreement, due to Multiplan's material breaches of the Agreement.
Multiplan.

34.     Multiplan failed to cure the material breaches identified by Mississippi Coast
Physicians in the letters dated February 4, 2015 and May 14, 2015. Multiplan's failure to cure its
material breaches of the Agreement caused the Agreement to be terminated April 1, 2014 or
alternatively no later than June 14, 2015.

35.     Multiplan continued to reduce charges for medical services provided by Bienville
Orthopaedic to the amounts for such charges in Multiplan's own fee schedule after the
Agreement was terminated.  Bienville Orthopaedic is entitled to damages proximately caused by
Multiplan's breach of the Agreement after it was terminated.

## COUNT I

### Breach of Contract

36.     Mississippi Coast Physicians and Bienville Orthopaedic reassert the allegations of
paragraphs 1 through 35.

37.     Multiplan materially breached the Agreement by repricing and reducing claims
for medical services provided by Bienville Orthopaedic to Participants in workers compensation
plans or Benefit Programs below ninety percent (90%) of the Mississippi Workers'
Compensation Medical Fee Schedule for such medical services.

38.     Multiplan materially breached the Agreement by failing to pay or causing its
Clients to fail to pay claims for medical services provided by Bienville Orthopaedic to
Participants in workers compensation plans or Benefit Programs within thirty days of submission

9

of the claims.

39.     Multiplan materially breached the Agreement by reducing claims for medical services provided by Bienville Orthopaedic for workers compensation patients whose employers or workers compensation insurance carriers are not Clients of Multiplan, as defined by the Agreement.

40.     Multiplan materially breached the Agreement by continuing to reduce claims for medical services provided by Bienville Orthopaedic to Participants in workers compensation plans or Benefit Programs after the Agreement was terminated for cause due to Multiplan's material breaches of the Agreement.

41.     Multiplan's breaches of the Agreement proximately caused injury to Bienville Orthopaedic and its physicians and other health care professionals.

42.     Bienville Orthopaedic and its physicians and other health care professionals have been damaged by Multiplan's material breaches of the Agreement and are entitled to damages in excess of $600,000.

<u>COUNT II</u>

<u>Tortious Breach of Contract</u>

43.     Mississippi Coast Physicians and Bienville Orthopaedic reassert the allegations of paragraphs 1 through 42 above.

44.     As described more fully above, Multiplan's wrongful conduct in unilaterally and without any contractual justification reducing the amount of claims for medical services provided by Mississippi Coast Physicians and Bienville Orthopaedic and by reducing the amount of claims for employers and workers compensation insurance carriers who were not Clients of Multiplan, in addition to constituting a breach of the Agreement, was accompanied by

10

intentional, willful and or wantonly negligent conduct constituting an independent tort against Mississippi Coast Physicians and Bienville Orthopaedic.

45.     As a direct and proximate cause of Multiplan's wrongful and tortious conduct, Mississippi Coast Physicians and Bienville Orthopaedic have been injured and are entitled to damages.

## COUNT III

## Tortious Interference With Contracts and Business Relations

46.     Mississippi Coast Physicians and Bienville Orthopaedic reassert the allegations of paragraphs 1 through 45 above.

47.     As described more fully above, Multiplan has wrongfully interfered with claims, medical services and the contractual and statutory obligations of Multiplan's Clients to pay Mississippi Coast Physicians and Bienville Orthopaedic for medical services provided to Participants in workers compensation plans or Benefit Programs.  Multiplan's conduct was calculated to cause damage, loss, and/or harm to Mississippi Coast Physicians and Bienville Orthopaedic in their lawful business, without the right to do so by Multiplan and for its economic benefit.

48.     As a direct and proximate cause of Multiplan's conduct, Mississippi Coast Physicians and Bienville Orthopaedic have been injured and are entitled to damages.

## COUNT IV

## Declaratory Judgment

49.     Mississippi Coast Physicians and Bienville Orthopaedic reassert the allegations of paragraphs 1 thru 48 above.

11

50.     Multiplan committed material breaches of the Agreement.  Multiplan failed to cure the material breaches within thirty days of the letters from Mississippi Coast Physicians dated February 4, 2015 and May 14, 2015 notifying Multiplan of its material breaches of the Agreement.

51.     As a result of Multiplan's failure to cure its material breaches, the Agreement terminated April 1, 2014 or alternatively no later than June 14, 2015.

52.     Mississippi Coast Physicians and Bienville Orthopaedic are entitled to declaratory relief establishing that the Agreement was terminated no later than June 14, 2015.

## COUNT V

### Unjust Enrichment

53.     Mississippi Coast Physicians and Bienville Orthopaedic reassert the allegations of paragraphs 1 thru 52 above.

54.     In the alternative and if Multiplan denies that it has any contractual obligation or liability to pay Mississippi Coast Physicians and Bienville Orthopaedic for its reduction of or payment of any claims submitted by Mississippi Coast Physicians and Bienville Orthopaedic, then Multiplan is in possession of property which in good conscience and justice it should not retain, namely, profits from Clients proximately caused by Multiplan's reductions in claims submitted by Mississippi Coast Physicians and Bienville Orthopaedic, but which it should deliver to Mississippi Coast Physicians and Bienville Orthopaedic.

WHEREFORE, Mississippi Coast Physicians and Bienville Orthopaedic request that process issue and pray for judgment as follows:

A.   For actual damages from Multiplan for breach of the Agreement by wrongfully reducing claims for medical services lower than ninety percent (90%) of the Mississippi Workers' Compensation Medical Fee Schedule in the approximate amount of $600,000;

B.   For actual damages from Multiplan for breach of the Agreement by continuing to wrongfully reduce claims for medical services after the Agreement was terminated;

C.   For actual damages from Multiplan for breach of the Agreement and its wrongful acts in reducing claims for medical services for entities that were not Clients of Multiplan;

D.   For actual and punitive damages and attorneys' fees for Multiplan's tortious breach of the Agreement;

E.   For actual and punitive damages and attorneys' fees for Multiplan's tortious interference with contracts and business relations;

F.   For costs, labor and time incurred as a result of Multiplan's breaches of the Agreement;

G.   For a judgment declaring that the Agreement was terminated April 1, 2014 or alternatively no later than June 14, 2015;

H.   For prejudgment and post judgment interest;

I.   For trial by jury on all issues so triable; and

J.   For such relief as may be just and proper.

Respectfully submitted,

Lewis W. Bell (MSB # 2337)
H. Ruston Comley (MSB # 102307)
WATKINS & EAGER PLLC
Post Office Box 650
Jackson, Mississippi 39205
(601) 948-6470
lbell@watkinseager.com
rcomley@watkinseager.com

ATTORNEYS FOR MISSISSIPPI COAST
PHYSICIANS LLC AND BIENVILLE
ORTHOPAEDIC SPECIALISTS LLC

Dated:  June 29, 2016

14



**MultiPlan®**

# MULTIPLAN INC.

021940

## PARTICIPATING GROUP PRACTICE AGREEMENT

**THIS AGREEMENT,** effective November 1, 2000, is entered into by MultiPlan, Inc., 115 Fifth Avenue, New York, New York 10003-1004 (MPI), and **Mississippi Coast Physicians** (Group).

**WHEREAS,** on behalf of various organizations, including self-insured employers, union welfare funds, third party administrators, and other similar entities (Clients), who issue or administer health benefits services coverage pursuant to a benefit plan, automobile liability insurance, workers' compensation program or other plan (Benefit Programs) for covered individuals (Participants), MPI has established networks of preferred health care providers who have agreed to render health care services to Participants in exchange for reimbursement at negotiated rates; and

**WHEREAS,** Group is authorized to represent its member physicians and/or other professional providers of health care services (Practitioners) for the purposes of entering this Agreement on their behalf; and

**WHEREAS,** MPI wants to establish a preferred provider relationship with Group and its Providers;

**WHEREAS,** Group, on behalf of its Practitioners, wants to enter into a preferred provider relationship with MPI in accordance with the terms of this Agreement;

**THEREFORE,** in consideration of the foregoing and of the mutual promises herein, and intending to be legally bound hereby, the parties agree as follows:

## A. DEFINITIONS

1. **Benefit Plan or Benefit Program**  A contract, policy, or other document, or a Workers' Compensation or auto medical plan under which a Client is obligated to provide benefits on behalf of Participants.

2. **Clean Claim**  A completed HCFA 1500 or other standard billing form providing the same information.

3. **Client (Payor)**  An employer, insurance carrier, or other entity that sponsors or administers, as applicable, one or more Benefit Plan and which has contracted with MPI on behalf of one or more such Benefit Plan, to enable Participants to have access to health care providers in MPI's provider network at MPI's Contract Rates.

4. **Contract Rates**  The rates of reimbursement for health care services rendered to Participants as set forth in MPI's agreements with MPI Practitioners, whether in the form of a per diem, case rate, procedure rate, negotiated rate based on published charges, or fee schedule.

515

**Exhibit A**

5.    **Co-insurance**  An amount equal to a fixed percentage that the Participant is responsible for paying in accordance with the Benefit Program.

6.    **Coordination of Benefits**  The determination of which of two or more Benefit Programs will pay health benefits for a Participant as primary payor and which will pay as secondary payor, and/or as tertiary payor.

7.    **Co-payment**  An expressed dollar amount for a given Covered Service which, under the terms of the Benefit Program, is required to be paid by the Participant directly to the Provider.

8.    **Covered Service**  A medical service provided under the terms of this Agreement which is eligible for reimbursement under the terms of the applicable Benefit Program.

9.    **Credentialing**  The process of verifying and evaluating qualifying information given to MPI by the Provider, including, but not limited to, the Provider's license, education, malpractice claim information, training, insurance, areas of practice and sanctions.

10.   **Deductible**  The amount a Participant is required to pay by the Benefit Program before a claim for benefits by the Participant is eligible for reimbursement by the Client.

11.   **Medical Emergency**  A situation in which health care services are rendered to a Participant for the treatment of a suddenly occurring condition if delaying the performance of such service would threaten the life or limb of the Participant or result in permanent disfigurement, potential or permanent disability, or severe pain.

12.   **Participant (Eligible Person)**  A person who is entitled to benefits and who on the date health care services are rendered has satisfied the eligibility requirements under the Client's Benefit Program.

13.   **Quality Assurance/Management**  An ongoing process which is approved and conducted by the Client, designed to objectively and systematically monitor and evaluate the quality and timeliness of health care services furnished by Participating Providers to Participants and to identify and resolve problems based on established criteria.

14.   **Usual and customary charge**  The fee for a health care service which is no greater than the average and prevailing charge for the same service in the same geographic community or in a geographic community which is similar to that in which the service is rendered.

15.   **Utilization Management Program**  A process designed to review and determine, on a prospective, concurrent, and/or retrospective basis, whether the medical procedure provided to a Participant pursuant to the terms of the Benefit Program and this Agreement is a Covered Service.

B.    **RIGHTS AND OBLIGATIONS OF GROUP**

1.    **Authorization**  Group represents and warrants that it is authorized in writing to execute this Agreement on behalf of each Practitioner listed in Exhibit A, and to obligate said Practitioners to abide by the terms of this Agreement.

grpracmd.doc 7/24/00                                     2

2.   **Credentials**

    a.    Group authorizes MPI to verify the credentials of each Practitioner to assure that each Practitioner meets or exceeds MPI's credentialing criteria.  If Group requests a copy of any Practitioner's credentialing file from MPI, MPI will provide a copy of such file at MPI's cost, that is, for the amount MPI has expended to verify the Practitioner's credentials.

    b.    Group shall make best efforts to assure that each Practitioner complies with all laws relating to furnishing professional services to Participants, and maintains in effect all licenses, registrations, permits, and other governmental approvals which may be necessary for that purpose.

    c.    Providers shall be recredentialed by MPI every two years, or periodically at other intervals acceptable to MPI.

    d.    Group shall notify MPI within five business days of learning of any material change in a Practitioner's credentials, including, but not limited to, occurrence of any of the following:

        (i)    The revocation, restriction, termination or voluntary relinquishment of any of the licenses, certifications or accreditations required to practice a Practitioner's profession; or

        (ii)    The imposition of any disciplinary action, including censure and reprimand, by any State licensing board; or

        (iii)    Any final disposition or settlement of any legal action against Practitioner for professional negligence; or

        (iv)    Any conviction for any criminal charge except for minor traffic infractions; or

        (v)    Any lapse, termination or material change in the liability insurance coverage required by this Agreement; or

        (vi)    Any restriction, suspension, revocation or voluntary relinquishment of staff membership or clinical privileges at any health care facility; or

        (vii)    The existence of an impairment of the Practitioner's ability to provide professional services that is caused by alcohol, drugs, or physical or mental disability; or

        (viii)    Conduct which has harmed or endangers the health or welfare of a patient.

grpracnd.doc 7/24/00            3

3.   **Group Data**  Group shall provide MPI with the following and shall notify MPI within ten days of any material change in the items designated a through e, below.

  a.   Group's Articles of Incorporation

  b.   Group's Bylaws

  c.   Group's Federal Identification Number

  d.   A sample copy of each type of agreement currently in effect between the Group and Practitioners

  e.   A complete list of Group's Practitioners, setting forth the following with respect to each Practitioner:

> Name
> Office Address(es)
> Office Telephone Number(s)
> Professional License and Expiration Date
> DEA License and Expiration Date
> Specialty(ies)
> Federal Tax Identification Number

4.   **Provision of Services**

  a.   Group and Practitioners solely shall be responsible for the professional advice and treatment rendered to Participants pursuant to this Agreement, and MPI disclaims any liability with respect to such matters.

  b.   Group shall make best efforts to assure that Practitioners shall provide covered professional services to all presenting Participants, including those covered by Workers' Compensation and auto liability coverage, in accordance with community standards, consistent with each Practitioner's training and expertise, and in the manner in which services are provided by Practitioner to other patients, without discrimination based on sex, race, color, religion, marital status, sexual orientation, age, ancestry, or national origin.

  c.   All sites at which Group Practitioners practice shall be considered in-network sites under this Agreement.  If a Practitioner also practices independently of the Group, and has not contracted with MPI directly with respect to that independent site, services rendered by Practitioner at that site shall be considered out-of-network. Practitioners shall use different tax identification numbers to distinguish between in-network and out-of-network sites.

  d.   If Practitioner is a primary care physician, internist, family practitioner or obstetrician/gynecologist, Group shall assure that Practitioner shall arrange for Participants' access to covered services twenty-four hours a day, 365 days a year.

5.   **Referrals**   Group shall assure that Practitioners agreeing to participate under this agreement agree to make best efforts, according to patient need, Practitioner expertise and professional judgment, to refer Participants to other Providers in MPI's network except where impracticable due to the unavailability of an MPI Practitioner in the appropriate specialty, the absence of a reasonably convenient MPI health care facility, or due to a medical emergency.

6.   **Quality Assurance**   Group shall assure that Practitioners agreeing to participate under this agreement agree to participate in and comply with all reasonable quality assurance and utilization management programs administered by Clients or their designees, to the extent that such programs are consistent with community standards.

7.   **Insurance**

   a.   Group shall assure that each Practitioner opting to participate in this agreement agrees to maintain professional liability insurance covering the Practitioner against claims arising out of the services to be performed hereunder in the minimum amounts required by law or, in the absence of statutory requirements, no less than $1,000,000 per occurrence and $3,000,000 per annual aggregate. If the form of insurance is "claims-made," Group shall assure that the Practitioner maintains appropriate tail coverage for claims made after the termination of this Agreement regarding acts or omissions which occurred during the term of this Agreement. Group shall provide MPI with a copy of each Practitioner's certificate(s) of insurance.  Group shall assure that each Practitioner notifies MPI in writing within thirty days of cancellation, non-renewal, or any material change in such coverage.

   b.   Group shall maintain professional liability insurance against claims arising out of the services to be performed hereunder by Group and Practitioners in the minimum amounts required by law or, in the absence of statutory requirements, no less than $1,000,000 per occurrence and $3,000,000 annual aggregate.

8.   **Grievance Procedures.** Group and Practitioners shall maintain procedures for resolving grievances relating to patient care, and shall cooperate with any grievance procedures or programs sponsored by MPI, Clients, or their designees.  Group and/or Practitioners shall notify MPI promptly upon knowledge of any dispute, complaint, or grievance relating to patient care or other disputes involving MPI, its Clients, their designees, or Participants.

9.   **Coordination of Benefits.**   Group shall cooperate, and shall assure that each Practitioner opting to participate in this agreement agrees to cooperate, with Clients for purposes of coordinating benefits. When a Client is a primary payor, the billing party shall accept from Client, as payment in full for covered services, the Contract Rates established in Exhibit B, less the appropriate deductibles, co-payments and co-insurance. When a Client is a secondary payor, the billing party shall accept from Client as payment for covered services the difference between the Contract Rates set forth in Exhibit B, less the sum of the amount paid by the primary payor(s) and the appropriate deductibles, co-payments and co-insurance.

## C.   RIGHTS AND OBLIGATIONS OF MPI

1.   **Limitations** MPI's duties are limited to those specifically set forth herein. MPI does not determine eligibility or benefit availability for Participants under Clients' Benefit Programs. MPI is not liable for reimbursement of Practitioner for services rendered pursuant to this Agreement, and does not exercise any control with respect to Clients' Benefit Programs assets, policies, practices, procedures, or payment of claims.

2.   **Right to Suspend and Remove** MPI reserves the right to suspend, and remove from its directories, a Practitioner with respect to whom any of the events described in Section B.2.d. of this Agreement has occurred, or is alleged to have occurred, and is under investigation. MPI shall notify the Practitioner and Group of the suspension and/or removal of a member.

3.   **Directories** MPI shall provide Clients with a printed directory of MPI preferred providers, as well as a toll free telephone number for use by Clients and Participants in determining whether a Practitioner is in the MPI network, and for referrals to MPI Practitioners. MPI is permitted to and shall use Practitioners' names, addresses, telephone numbers and classification of services in its printed and telephone directories.

4.   **Records Review** Upon reasonable notice, MPI shall have the right to conduct a site review, and to review and copy Group's records for purposes reasonably related to this Agreement, including but not limited to, quality assurance. Such review may include, but not be limited to, site visits and quality assurance/data gathering. Such review shall not unreasonably interfere with Group's practice and shall be conducted during normal business hours. Each party shall bear its own costs of such review. All reviews shall be conducted by authorized individuals who have signed a confidentiality agreement. Reports of such reviews shall be kept as internal documents, and shall not be revealed to any outside source, except as required by law.

5.   **Audit** Upon fifteen business days' written notice, and during MPI's regular business hours, each party shall have the right to audit the other's records pertaining to compensation under this Agreement for a period of six months prior to the date of the notice of audit. Group or a Practitioner may challenge a payment made by a Client as erroneous or inadequate during the six months following Practitioner's receipt of such payment. Thereafter, such a challenge shall be null, and the payment shall be deemed proper.

6.   **Grievances and Appeals.** MPI shall maintain a grievance and appeal mechanism that shall be available to Practitioners as a forum for the resolution of complaints and disputes pertaining to issues arising out of this Agreement including but not limited to credentialing and recredentialing, reimbursement, disciplinary actions, and quality management issues. In general, utilization management issues will be referred to the Client.

## D.   COMPENSATION

1.   Practitioner shall submit Clean Claims directly to Clients for all services rendered to Participants.

2.     Practitioner shall look solely to Client or if applicable to Clients' Workers Compensation carrier for payment for Covered Services rendered pursuant to the terms of this Agreement. Practitioner shall not balance bill or attempt to collect compensation from Participants except for applicable co-payments, deductibles, and co-insurance or as otherwise may be expressly permitted by law. Provider shall accept from Clients as payment in full for each Covered Service rendered pursuant to this Agreement the least of the following, less any applicable co-payment, co-insurance and/or deductible:

      a.     the amount specified on MPI's fee schedule, as amended from time to time, a sample of which is annexed hereto as Exhibit B;

      b.     the Practitioner's usual and customary charge, or

      c.     with respect to services rendered in connection with Workers' Compensation, no-fault automobile insurance and/or other coverage for which there is a state-mandated fee schedule, if fee negotiation is permitted by law and/or regulation in the applicable state, ninety percent of the state fee schedule amount as payment in full for each covered service rendered to a Participant.

3.     MPI shall use its best efforts to ensure that Clients make payment to Practitioner, to the extent of their liability, within thirty business days from the date of receipt of a Clean Claim. **If Client does not pay Clean Claim within thirty business days after receipt, then full billed charges will apply.**

4.     Group shall assure that Practitioners agreeing to participate in this agreement agree to notify Client and MPI of any erroneous claim sent to a Client within sixty days of the date the claim was issued, and of any erroneous payment received within sixty days of the date Client's payment was received.

5.     Group shall assure that Practitioners agreeing to participate in this agreement agree to furnish all information reasonably required by Clients to verify Practitioners' services rendered and the charges for such services.

6.     In the event of a dispute between a Practitioner and a Client regarding billed amounts, payment due, or utilization review issues, Client shall have the right, upon written notification of MPI about the dispute within sixty days of receipt of the relevant Clean Claim, to withhold payment pending resolution of the dispute. MPI shall make its best efforts to assist the parties in resolving the dispute.

7.     With respect to services rendered during the term of this Agreement, the rights and obligations set forth in this Section shall survive the termination of the Agreement.

E.     <u>TERM AND TERMINATION</u>

1.     <u>Term</u>  This Agreement shall be effective for one year from the Effective Date indicated above, and, thereafter, shall renew automatically for consecutive one-year terms.

2.   **Termination**

    a.    Either party may terminate this Agreement at the end of a term that is in progress by giving the other party written notice of the termination at least ninety days prior to the end of the term in progress, and such termination shall be effective on the first day of the first month following the end of the term then in progress.

    b.    Either party may terminate this Agreement for cause due to a material breach by giving thirty days advance written notice. The notice of termination for cause will not be effective if the breaching party cures the breach within the thirty day notice period.

3.    **Effect of Termination**  Upon termination of the Agreement, Group shall be responsible for arranging the orderly transfer of all Participants under Practitioners' care to other Providers. Group shall assure that Practitioners shall make best efforts to transfer care to other MPI Practitioners, unless, as described in B.5., such transfer is impracticable. Practitioners shall be reimbursed for services rendered until transfer in accordance with the terms of this Agreement. Obstetricians and Certified Nurse Midwives who cannot continue care through the conclusion of a Participant's pregnancy shall inform the Participant, Client, and MPI, and shall be entitled only to a pro-rated portion of the fee based upon services rendered. The obligations set forth in this provision shall survive the termination of this Agreement.

F.    **MISCELLANEOUS**

1.    **Independent Contractors**  Each party, including its officers, directors, employees and agents, acts as an independent contractor. Neither party has express or implied authority to assume or create any obligation on behalf of the others. The parties shall maintain a cooperative relationship in order to effectuate this Agreement.

2.    **Indemnification**  Each party solely is responsible for its own actions or omissions, and those of its officers, directors, employees and agents, arising in connection with obligations created under this Agreement, including Practitioner's rendering professional advice and/or treatment. Each party shall hold the other, including its officers, directors, employees, agents, successors and assigns, harmless from and against all claims, liability, damages, and expenses, which may be alleged against or incurred by the other party and arising from the indemnifying party's acts or omissions in connection with this Agreement.

3.    **Confidentiality and Disclosure**

    a.    The parties, including each Practitioner, shall comply with all applicable laws and regulations, including all applicable laws and regulations regarding maintenance and disclosure of Participants' medical records.

    b.    All confidential information given to Group by MultiPlan, including the names of MultiPlan's Clients, shall be kept confidential and shall not be used except as necessary to implement this Agreement.

c.  Neither party shall disclose the Contract Rates and/or the compensation payable to Practitioners pursuant to the terms of this Agreement, except as may be required in order to comply with this Agreement, or to the extent required by applicable law. In addition, MPI, in its discretion, may release such information to Clients and potential clients as MPI may reasonably determine is required in connection with marketing its products.

d.  MPI and Clients may include each Practitioner's name, address, telephone number, practice specialties, and the facilities with which Practitioner is affiliated, in its directories of participating Practitioners.

4.  **Severability and Waiver**  The waiver by either party of any breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach of the same or any other provision. The failure to exercise any right hereunder shall not operate as a waiver of such right. The finding by a court of competent jurisdiction that any provision herein is void shall not void any other valid provision of this Agreement.

5.  **Modification**  This Agreement, and Exhibits A and B constitute the entire agreement between the parties with respect to the subject matter hereof, and as of the effective date, shall supersede any previous agreements or understandings, written or oral, between the parties. All modifications of the Agreement, except for a modification of MPI's fee schedule, shall be in writing and signed by both parties. MPI's fee schedule may be amended unilaterally by MPI.

6.  **Notices**  Any notice required to be given pursuant to this Agreement shall be in writing and delivered by hand, by certified mail (return receipt requested), or by facsimile confirmed with overnight delivery, to the signatories, or their successors if any, at the addresses set forth below.

7.  **Governing Law**  This Agreement shall be governed by the laws of the state in which the Group's principal offices are located.

grpracnd.doc  7/24/00                        9

**IN WITNESS HEREOF,** the parties have executed this Agreement.

**MULTIPLAN, INC.**
115 Fifth Avenue
New York, New York 10003-1004

By: _____  11/7/2000     By: _____
Donald Rubin              Date              Signature          Date
Chairman                                    Alfred B. McNair, Jr. MD - President
                                            Print Name and Title

                                            Tax I.D. #: _(A-0879894_

**EXHIBIT A**

## MULTIPLAN, INC.
### PARTICIPATING PRACTITIONERS

**EXHIBIT B**
**MULTIPLAN, INC.**
**FEE SCHEDULE**
**MISSISSIPPI**

The following is our enacted fee structure by service area (defined by the first 3 digits of your zip code):

| ZIP CODE | REIMBURSEMENT |
|---|---|
| 395 | 155 % OF The Medicare RBRVS Fee Schedule Updated Annually for E&M Codes.  When RBRVS does not exist for a procedure, a percentile (50th) of MDR is utilized as the fee. |

**CPT CODES**

| CPT | Fee |
|---|---|
| 99201 | $ 56.00 |
| 99202 | $ 88.00 |
| 99203 | $ 124.00 |
| 99204 | $ 180.00 |
| 99205 | $ 225.00 |
| 99211 | $ 28.00 |
| 99212 | $ 48.00 |
| 99213 | $ 67.00 |
| 99214 | $ 102.00 |
| 99215 | $ 153.00 |
| 99221 | $ 99.00 |
| 99222 | $ 164.00 |
| 99223 | $ 222.00 |
| 99231 | $ 51.00 |
| 99232 | $ 81.00 |
| 99233 | $ 113.00 |
| 99234 | $ 181.00 |
| 99235 | $ 246.00 |
| 99236 | $ 302.00 |
| 99238 | $ 95.00 |
| 99239 | $ 126.00 |
| 99242 | $ 127.00 |
| 99244 | $ 228.00 |
| 99245 | $ 296.00 |
| 99254 | $ 205.00 |
| 99255 | $ 279.00 |
| 99283 | $ 91.00 |
| 99291 | $ 271.00 |
| 99295 | $ 1,142.00 |



**Mississippi Coast Physicians, LLC**

Wednesday, February 04, 2015

**MultiPlan Inc.**

Attention: Mr. Mark Tabak, CEO, and
Mr. Michael Ferrante, EVP, COO.          Re:  Mississippi Coast Physicians, LLC and
115 Fifth Avenue                              MultiPlan, Inc. Agreement,
New York, New York 10003                     Dated November 11th 2000

Dear Sirs;                              Via: USPS Next Day – Certified – Return Receipt Request.

This day, Mississippi Coast Physicians, LLC hereby serves MultiPlan Inc. with notice of our intent to terminate, with cause, our agreement and affiliation with MultiPlan, Inc. effective Wednesday, February 4th 2015. This letter is to serve as "Proper Notice" and this date, 02/04/2015 triggers; Section E "Term and Termination" subsection 2b, Termination with Cause of the Agreement. MultiPlan Inc. hereby has 30 days to effectuate any corrective action MultiPlan Inc. wishes to implement. Should MultiPlan Inc. not be able to effectuate corrective action and cure, in the cure period of 30 days, the "material breach" by March 6th 2015, as referenced in Section E subsection 2b above, we Mississippi Coast Physicians, LLC will consider the Agreement properly terminated and no longer associated with MultiPlan Inc. Effective March 6th 2015, Mississippi Coast Physicians, LLC and all our members will no longer be subject to the terms and conditions addressed in said Agreement including and not limited to any discounts on our fees.

Mississippi Coast Physicians, LLC has initiated an audit network wide of improperly paid and/or short paid claims that have been encountered and found them to be significant. The audit includes but not limited to the following:

- Payors have ignored MultiPlan's re-pricing sheet and/or procedure, stating no discounts apply, yet proceed to reduce reimbursement to MCP providers.
- Payors have chosen to apply an arbitrary reimbursement amount not applicable to any fee schedule associated with our Agreement.
- Payors have not submitted their claims to MultiPlan for re-pricing and apply their own discount.
- Payors have referenced MultiPlan on their EOB's as clients of MultiPlan but do not adhere to the contracted discounts in the adjudication of the claim.

The improper adjudication and re-pricing of claims is wide spread and appears to be intentional. Mississippi Coast Physicians, LLC feels this action rises to an egregious material breach of our Agreement, and prompting our action. Multiple attempts have been made, and failed, with MultiPlan Inc. clients, payors, and MultiPlan Inc. staff to address and correct this material breach without satisfaction, leading to this Termination Notice and our action.

Respectfully Submitted,

Alfred E. McNair, Jr., M.D., President
Mississippi Coast Physicians, LLC

cc:  Raymond Caswell, MultiPlan Inc. Sr. Network Dev. Exec.
222 West Las Colinas Blvd., Suite 1500 North Tower,
Irving, Texas 75039

cc: MultiPlan, Inc  (By certified or overnight Mail/return receipt Requested)
Service Operations Department
1100 Winter Street
Waltham, MA 02451

Mississippi Coast Physicians, LLC          3890 Bienville Blvd., Ocean Springs, MS 39564          Ph: 228-872-6291

**Exhibit B**



# Mississippi Coast
# Physicians, LLC

May 14, 2015

David M. Gandy
Senior Vice President, Network Development
MultiPlan, Inc.
2140 8ᵗʰ Street, Suite B
Mandeville, Louisiana  70471

    Re:    Mississippi Coast Physicians, LLC and MultiPlan, Inc.
           Agreement, Dated November 11, 2000

Dear Mr. Gandy:

      This letter is written in response to your letter to me dated March 31, 2015.  The repeated material breaches of the November 11, 2000 agreement by Multiplan remain uncured.

      The most egregious breaches continue to be and include Multiplan's widespread re-pricing of workers compensation claims in direct breach of Section D, Compensation, paragraph 2(c) of the November 11, 2000 agreement.  Under that paragraph, the medical provider agrees to accept 90% of the state fee schedule for workers' compensation related services.  Multiplan has re-priced such claims for its Clients below the 90% of the state fee schedule floor.  We have brought this to Multiplan's attention, but the problem remains uncorrected and we have not been paid what Multiplan agreed to pay us for such services.  The improper adjudication and re-pricing of these claims is so widespread that it appears to be intentional.  We have incurred substantial damages (the difference between the re-pricing amounts Multiplan has tried to force us to accept and 90% of the state fee schedule floor) as a result of these breaches.

      For example, Bienville Orthopaedic Specialists has calculated the amount of fees that have not been paid in accordance with the established fee schedules and that are owed for its services for workers' compensation patients for one quarter (January through March 2014) to be approximately $60,000.  That amount is for one quarter of one year for one medical provider.  We are in the process of auditing other physicians in Mississippi Gulf Coast Physicians to calculate the amount of fees that have not been paid in accordance with the established fee schedules and we expect Multiplan to compensate all physicians for these damages and losses in full.

      Because Multiplan's material breaches have not been corrected in accordance with the November 11, 2000 agreement, that agreement is terminated.  We are notifying patients and your Clients that we are no longer in the Multiplan network and that we will no longer accept any reductions or discounts in our fees.  To facilitate notification to workers' compensation patients, please send us a list of all workers' compensation patients in the Multiplan network by medical provider.

                                                      Sincerely yours,

                                                      Alfred E. McNair, Jr., M.D., President
                                                      Mississippi Coast Physicians, LLC


cc:    Raymond Caswell, MultiPlan Inc. Sr. Network Dev. Exec.
       222 West Las Colinas Blvd., Suite 1500 North Tower,
       Irving, Texas   75039

cc:    MultiPlan, Inc. (By certified or overnight Mail/return receipt Requested)
       Service Operations Department
       1100 Winter Street
       Waltham, MA   02451


P. O. Box 189    Ocean Springs, MS 39566    Ph: 228-872-7618    Fax: 228-872-0452

From: sop@cscinfo.com<mailto:sop@cscinfo.com> [mailto:sop@cscinfo.com]
Sent: Monday, July 11, 2016 1:10 PM
To: Gasik, Shawna
Subject: Notice of Service of Process - Transmittal Number: 15368239

Corporation Service Company ®

NOTICE OF SERVICE OF PROCESS

Transmittal Number: 15368239<https://www.cscglobal.com/pbng/index.jsp?qvId=15368239>
(Click the Transmittal Number to view your SOP)

For more information on instant access to your SOP, click Sign Me
Up<http://www.cscglobal.com/sameday>.

Pursuant to client instructions, we are forwarding this summary and Notice of Service of Process.

_____

Entity:

Multiplan Services Corporation

Entity I.D. Number:

2261676

Entity Served:

MultiPlan, Inc.

Title of Action:

Mississippi Coast Physicians LLC vs. Multiplan, Inc.

Document(s) type:

Summons/Complaint

Nature of Action:

Contract

Court/Agency:

Jackson County Circuit Court, Mississippi

Case/Reference No:

2016-00121(2)

Jurisdiction Served:

Mississippi

Date Served on CSC:

07/08/2016

Answer or Appearance Due:

30 Days

Originally Served On:

CSC

How Served:

Personal Service

Sender Information:
Lewis W. Bell
601-965-1977
_____

Primary Contact:
Shawna Gasik
MultiPlan

Copy of transmittal only provided to:
Vickie St. Germain

_____

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appropriate action.

_____

Please visit www.cscglobal.com<http://www.cscglobal.com> for more information related to CSC's Litigation and Matter Management services, including MYSOP, online acknowledgement of SOP and to view a complete library of all SOP received on your behalf by CSC. CSC is SSAE 16 certified for its Litigation Management System.

2711 Centerville Road Wilmington, DE 19808
(888) 690-2882 | sop@cscinfo.com<mailto:sop@cscinfo.com>

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

<2016-0711 Mississippi Coast Physicians LLC vs MPI_Summons-Complaint.pdf>

NOTICE OF CONFIDENTIALITY: Information included in and/or attached to this transmission may be confidential. This transmission is intended for the addressee(s) only. Any unauthorized disclosure, reproduction, or distribution of and /or any unauthorized action taken in reliance on the information in this transmission is prohibited. If you believe that you received this transmission in error, please notify the sender by reply transmission and destroy the transmission without copying or disclosing it. We may also need to contact you for additional information as required by HIPAA or state law.

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---