UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MISSISSIPPI COAST PHYSICIANS LLC
and BIENVILLE ORTHOPAEDIC SPECIALISTS, LLC                    PLAINTIFFS

VS.                                         CIVIL ACTION NO: 1:16-cv-00273-HS0-JCG

MULTIPLAN, INC.                                                  DEFENDANT

---

**MEMORANDUM IN SUPPORT OF DEFENDANT MULTIPLAN, INC.'S
RULE 12(b)(6) MOTION TO DISMISS**

---

Defendant MultiPlan, Inc. ("MultiPlan"), submits this Memorandum in Support of its

Rule 12(b)(6) Motion to Dismiss the claims asserted by Plaintiffs, Mississippi Coast Physicians,

LLC and Bienville Orthopaedic Specialists, LLC (hereinafter "Plaintiffs"), for failure to state

cognizable claims upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure as to Plaintiffs' claims of tortious breach of contract, tortious

interference with contracts and business relations, and unjust enrichment.

## I.      FACTUAL BACKGROUND AND PLAINTIFFS' COMPLAINT.

Plaintiffs are licensed health care providers located in Ocean Springs, Mississippi. *See*

Exhibit "1," Complaint, ¶¶2-3. MultiPlan is a New York corporation with its principal place of

business in New York City.  Plaintiffs entered into an agreement, effective November 1, 2000,

titled "*Participating Group Practice Agreement*" (the "Agreement") with MultiPlan. *See* Exhibit

"1," Complaint, ¶8.  Plaintiffs allege that, under the Agreement, they and their physicians agreed

to accept contractually discounted rates of reimbursement for claims submitted for covered

medical services provided to MultiPlan's clients, which include self-insured employers, union

welfare funds, third party administrators, and workers compensation insurance carriers who issue

or who administer health benefit services coverage pursuant to a benefit plan, an automobile liability insurance policy, or a workers compensation program or plan. *Id.* at ¶¶10-11. Plaintiffs further allege that, under the Agreement, for covered services rendered by Plaintiffs and their physicians in connection with workers' compensation, no-fault auto insurance, or any other coverage for which there is a state-mandated fee schedule, Plaintiffs and their physicians agreed to accept as payment in full the lesser of the state-mandated fee schedule, or, if fee negotiation is permitted by state law or regulation, ninety percent (90%) of the state fee schedule, after any applicable co-payment, co-insurance or deductible. *Id.* at ¶13.

Plaintiffs allege that, by law in Mississippi, charges for medical services for workers' compensation patients are set by fee schedule, and fee negotiation between medical providers and payers is permitted. *Id.* at ¶14. The Plaintiffs contend that they provided medical services to hundreds of patients who were participants in workers compensation plans or benefit programs, and that Plaintiffs submitted claims for those medical services. *Id.* at ¶¶15-16. Plaintiffs further contend that MultiPlan's clients submitted Plaintiffs' claims to MultiPlan and MultiPlan "repriced" the claims in accordance with MultiPlan's fee schedule and sent the repriced claims back to its clients, who then paid Plaintiffs the amounts reduced and approved by MultiPlan. *Id.* at ¶¶19-20. Plaintiffs allege that the allowed amounts for medical services on MultiPlan's fee schedule are lower than the allowed amounts for medical services on the Mississippi Workers' Compensation Medical Fee Schedule, and are lower than ninety percent (90%) of the charges on Mississippi Workers' Compensation Medical Fee Schedule. Thus, Plaintiffs' allege that MultiPlan breached the Agreement by failing to reprice or reduce the medical services at issue in accordance with the terms of the Agreement. *Id.* at ¶¶21-24.

4843-0001-7461 v1
2917223-000113 08/02/2016

Plaintiffs claim that, through MultiPlan's alleged breach of the Agreement, Plaintiffs suffered damages in the amount of the difference between what MultiPlan's clients paid pursuant to MultiPlan's reductions of the claims and ninety percent (90%) of the Mississippi Workers' Compensation Medical Fee Schedule.  Alternatively, Plaintiffs claim that the damages caused by MultiPlan's alleged breach of the Agreement are the difference between what MultiPlan's clients paid pursuant to MultiPlan's reductions of the claims and the actual amount of the claims submitted by Plaintiffs, because those claim were not paid within thirty (30) business days from the date of receipt of the claims, as permitted by the Agreement.  *Id.* at ¶¶27-28.

In addition to Plaintiffs' allegation that MultiPlan breached the Agreement by improperly reducing certain medical claims for its clients, Plaintiffs further allege that MultiPlan breached the Agreement by reducing charges for medical services provided by Plaintiffs for entities that were not clients of MultiPlan.  To the extent Plaintiffs allege that MultiPlan's clients applied discounts to medical claims submitted by Plaintiffs for which the clients had no contractual right to access, such claims would be considered "out-of-network" claims.  Unlike "in-network" claims, for which the rate of payment is determined through a contractual relationship between a health care provider and an insurer, sponsor and/or administrator of a health plan (a "Payer"), payment of "out-of-network" claims is not governed by a contract between a health care provider and Payer (as such a relationship does not exist).  Rather, a health care provider may only assert a claim for payment of "out-of-network" medical services to a Payer through an assignment of a patient's benefits set forth in the patient's applicable health plan.  Because a health care provider's right to payment from a Payer of an "out-of-network" claim is asserted through an assignment of the patient's benefits, a health care provider's right to payment for "out-of-

3

network" claims is determined in accordance with the terms of the applicable health plan issued by a Payer to the patient.

Upon information and belief, some of the medical services at issue in this matter were provided to members of employer-sponsored benefit plans that were established pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001.  Accordingly, concerning Plaintiffs' assertion that it was improperly paid for "out-of-network" claims submitted to these ERISA plans, such claims would represent claims for benefits brought on behalf of participants of ERISA plans under 29 U.S.C. § 1132(a)(1)(B), which provides a cause of action by a participant or beneficiary "to recover benefits due ... under the terms of the plan, to enforce ... rights under the terms of the plan, or to clarify ... rights to future benefits under the terms of the plan."   Any purported state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is completely preempted.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004) (*citing Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54-56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 143–145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

Plaintiffs assert causes of action against MultiPlan under theories of breach of contract, tortious breach of contract, tortious interference with contracts and business relations, and unjust enrichment.  Plaintiffs further seek a declaratory judgment from the Court declaring that the Agreement was terminated as of April 1, 2014, or, alternatively, no later than June 14, 2015.

As shown more fully below, with the exception of the breach of contract claim and the request for declaratory relief, Plaintiffs' allegations in their Complaint are insufficient to sustain a cause of action against MultiPlan.  Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules

4843-0001-7461 v1
2917223-000113 08/02/2016

of Civil Procedure, MultiPlan seeks dismissal of Plaintiffs' claims asserted under theories of tortious breach of contract, tortious interference with contractual relations, and unjust enrichment.

## II.     LEGAL STANDARD

### A.     Standard for Rule 12(b)(6); Failure to State a Claim.

According to Federal Rule of Civil Procedure 12(b)(6), a complaint is properly dismissed if it "fails[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Motions made pursuant to Rule 12(b)(6) test the legal viability of a complaint.  A court reviewing such a motion must afford "the assumption that all the allegations in the complaint are true," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and determine whether the averments comprise a "plausible" right to recovery.  *Id.* at 570.

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  To overcome a Rule 12(b)(6) motion, a claimant must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the

4843-0001-7461 v1
2917223-000113 08/02/2016

complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Supreme Court's examination of the issue in *Iqbal* provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).

### III.    LEGAL ARGUMENT

#### A.    Plaintiffs' Tortious Breach of Contract Fails As A Matter of Law.

In order for Plaintiffs to recover for tortious breach of contract, they must show that there is a breach of contract that entitles them to punitive damages. *Unity Communications, Inc. v. AT&T Mobility, LLC,* 643 F.Supp.2d 829, 839 (S.D. Miss. 2009). The breach must result from "an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Id.* at 839. (citing *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d, 437, 447 (Miss. 1999). Further, "[p]unitive damages are to be assessed **only** in extreme cases." *Id.* at 839 (emphasis added). In Mississippi, the law does not favor punitive damages and because they are such an extraordinary remedy, are only "allowed with caution and within narrow limits." *Id.* *(*citing *Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So.2d 620, 622 (Miss.1988).

Plaintiffs' complaint states mere generalities and does not specify any allegations that suggest MultiPlan acted with malice, gross negligence or reckless disregard toward Plaintiffs. The general allegations that Plaintiffs make regarding their belief that MultiPlan incorrectly

reduced the amount of their claims for medical services under the agreement between the parties does not give rise to an intentional tort action.  Rather, this matter involves a simple dispute regarding the proper interpretation of a contract.  Plaintiffs do not allege any facts that support a cause of action arising under an independent tort theory.  Accordingly, Plaintiffs' claims of tortious breach of contract fail as a matter of law and must be dismissed.

      B.         <u>Plaintiffs' Tortious Interference with Contracts and Business Relations Also Fails As A Matter of Law.</u>

In order for Plaintiffs to establish a claim of tortious interference with contractual relations, they must prove:  (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.  *Nieder v. Franklin*, 844 So.2d 433, 437 (Miss. 2003) (citing *Par Indus., Inc. v. Target Container Co.,* 708 So.2d 44, 48 (Miss.1998) (quoting *Cenac v. Murry,* 609 So.2d 1257, 1268-69 (Miss.1992)). Specific intent is not required to prove tortious interference  but Plaintiffs must show that they are reasonably certain that a wrongful act interfered with the contract.  *Id.* at 437 (citing *Cranford v. Shelton,*378 So.2d 652, 655 (Miss.1980)). *See also Liston v. Home Ins. Co.,* 659 F.Supp. 276, 281 (S.D.Miss.1986).

In their Complaint, Plaintiffs vaguely allege that MultiPlan "wrongfully interfered with claims, medical services and the contractual and statutory obligations of Multiplan's Clients to pay [Plaintiffs]."  Such general allegations fail to satisfy the strict requirement that a plaintiff show specific and willful intent in order to sustain a tortious interference with contracts and business relations claim.  Again, this matter involves a simple dispute over differing interpretations of provisions of a contract between the parties.  The allegations in Plaintiffs'

7

Complaint do not support a tortious interference with contracts and business relations cause of action, and such claims should be dismissed.

        C.        <u>Plaintiffs' Unjust Enrichment Claims Also Fails As A Matter of Law.</u>

"The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong." *Dew v. Langford,* 666 So. 2d 739, 745 (Miss. 1995).

As Plaintiffs allege in their Complaint, Plaintiffs and MultiPlan were parties to a written agreement that governed their relationship. Plaintiffs have alleged that MultiPlan breached that contract. Unjust enrichment applies only to situations "where there is no legal contract." *Ground Control, LLC v. Capsco Indus.,* 120 So. 3d 365, 371 (Miss. 2013). Consequently, Plaintiffs' unjust enrichment claim fails as a matter of law and must be dismissed.

**IV.    CONCLUSION**

Plaintiffs' claims cannot withstand the scrutiny of Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs failed to state a cognizable right to relief against MultiPlan for tortious breach of contract, tortious interference with contracts and business relations, and unjust enrichment. Accordingly, these claims must be dismissed.

4843-0001-7461 v1
2917223-000113 08/02/2016

This the 2nd day of August, 2016.

Respectfully submitted,

MULTIPLAN, INC.

By Their Attorneys,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By: */s/ Jean C. Bertas*
    JEAN C. BERTAS

Jean C. Bertas (MS Bar No. 103837)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Vision Drive
Suite 400
Jackson, MS 39211
Telephone: (601) 351-2400
Fax: (601) 351-2424
E-mail: jbertas@bakerdonelson.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via CM/ECF upon the following this 2nd day of August, 2016.

Lewis W. Bell
H. Ruston Comley
WATKINS & EAGER PLLC
lbell@watkinseager.com
rcomley@watkinseager.com

This the 2nd day of August, 2016.

*/s/ Jean C. Bertas*
JEAN C. BERTAS

4843-0001-7461 v1
2917223-000113 08/02/2016